OPINION OF THE COURT
Francesca E. Connolly, J.
By way of background, on May 15, 2012, the plaintiff commenced this action to foreclose on certain real property located at 155 Villa at the Woods, Unit No. D211, Peekskill, NY 10566, by the filing of a summons, complaint, and notice of pendency.
On January 14, 2014, this court granted the plaintiffs motion for an order of reference. After signing that order of reference, the Westchester County Clerk’s office notified the court of the following: On May 16, 2012, the day after the plaintiff commenced the action, an employee of the plaintiffs attorneys, McCabe Weisberg & Conway, P.C., wrote to the Clerk’s office by email stating in pertinent part: “I E-Filed a case yesterday afternoon but it was not yet ready to be filed. I checked this morning and found an Index number already assigned to it. Is it too late to cancel it and get a refund?” Unbeknownst to the Court Clerk’s office, the County Clerk’s office issued the plaintiff a refund and, simultaneously therewith, deleted from its records the summons, complaint, and notice of pendency. Notwithstanding the foregoing, the plaintiff continued to file numerous papers on the New York State Courts Electronic Filing (NYSCEF) system, eventually moving for the order of reference. Notably, the papers filed in support of the motion annexed copies of the complaint and the notice of pendency, even though the County Clerk’s office had deleted these documents from its records and from the NYSCEF document list.[1] When this court granted the order of reference on January 14, 2014, it was unaware that the plaintiff had sought and obtained a refund for its index number.
Accordingly, faced with this irregularity, on February 4, 2014, this court issued a sua sponte order staying the action. In the order, the court directed that, unless the plaintiff moves for corrective action within a time certain, the action would be dismissed.
*533 In response to that order, the plaintiff now moves pursuant to CPLR 2001 to reinstate the index number upon its payment of the filing fee. The plaintiff argues that it always intended to proceed with the action under this index number, and the refund was obtained in error. Accordingly, the plaintiff requests that the court reinstate “the Index Number which was originally purchased, as well as reinstate the Notice of Pendency” (affirmation in support ¶ 11). The plaintiff agrees to pay the filing fees associated with reinstating the index number and notice of pendency.[2]
Gonsalves opposes the motion and cross-moves pursuant to CPLR 2004 to vacate his default and allow him to interpose a late answer (or deem the late answer he has already filed to be timely served, nunc pro tunc).[3] In seeking to deem his late answer timely, he argues that, if the plaintiff is permitted to correct its mistake with regard to the index number, he should be permitted to answer the complaint. In his affidavit, Gonsalves avers that, at the time service was made at the subject property, he was not living there; rather, he had hired a management company to manage the unit.
In reply/opposition, the plaintiff argues that Gonsalves’s cross motion should be denied since he has failed to establish a reasonable excuse for his default and a meritorious defense.
Discussion
1. The plaintiffs motion is granted in part and denied in part
The plaintiffs motion is granted to the extent of permitting it to restore its index number and its summons and complaint upon paying the applicable filing fees; however, the motion is denied with respect to its request to restore its notice of pendency. CPLR 2001 provides:
“At any stage of an action, including the filing of a summons with notice, summons and complaint or petition to commence an action, the court may permit a mistake, omission, defect or irregularity, including the failure to purchase or acquire an index number or other mistake in the filing process, to be corrected, upon such terms as may be just, or, if a *534 substantial right of a party is not prejudiced, the mistake, omission, defect or irregularity shall be disregarded, provided that any applicable fees shall be paid.” (Emphasis added.)
The foregoing italicized language was added to the statute by the state legislature in 2007 (see L 2007, ch 529, § 1), and the legislative history indicates that the purpose of the amendment to the statute was to address “a series of recent decisions by the Court of Appeals, which have held that defects in the commencement of actions or the payment of an index number fee will result in outright dismissal of an action so long as a timely objection is made to such defects” (Senate Introducer’s Mem in Support, Bill Jacket, L 2007, ch 529 at 5, citing Harris v Niagara Falls Bd. of Educ., 6 NY3d 155 [2006], Matter of Gershel v Porr, 89 NY2d 327 [1996], and Matter of Fry v Village of Tarrytown, 89 NY2d 714 [1997]). The amendments were intended to “give the court discretion to correct or ignore mistakes or omissions occurring at the commencement of an action that do not prejudice the opposing party” (Senate Introducer’s Mem in Support, Bill Jacket, L 2007, ch 529 at 5). When considering whether disregarding an error will prejudice the opposing party, the primary concern has been whether corrective action by the court in some way would unfairly extend the statute of limitations (see Grskovic v Holmes, 111 AD3d 234, 240-243 [2d Dept 2013]; see also Senate Introducer’s Mem in Support, Bill Jacket, L 2007, ch 529 at 5 [“It is important to emphasize that this measure would not excuse a complete failure to file within the statute of limitations”]).
Further, in Grskovic v Holmes, the Second Department observed, after carefully interpreting the text of CPLR 2001, that “a ‘correction’ of a mistake appears to be subject to a broader degree of judicial discretion without necessary regard to prejudice, whereas a complete ‘disregarding’ of a mistake must not prejudice an opposing party.” (111 AD3d at 243.)
Here, the relief sought by the plaintiff with respect to its index number and the deletion of its summons and complaint is in the nature of the correction of a mistake and, therefore, the court’s discretion is broad (see id.). The plaintiff in this case did in fact file a summons and complaint and due to an error or miscommunication, a refund was obtained for the filing fee. The court is satisfied that the plaintiff’s error was unintentional. Under these circumstances, the plaintiff should be permitted to correct the error with regard to its summons and complaint and, upon paying the applicable filing fee, the summons and complaint should be restored under the original index number.
*535 However, the plaintiff’s request to reinstate the notice of pendency must be denied. A notice of pendency (also known as a lis pendens) is, by its nature, notice to the world of the existence of the action.
“The plaintiff files [the notice of pendency] with the county clerk . . .' putting the world on notice of the plaintiffs potential rights in the action and thereby warning all comers that if they then buy the property or lend on the strength of it or otherwise rely on the defendant’s right, they do so subject to whatever the action may establish to be the plaintiff’s right” (Siegel, NY Prac § 334 [5th ed]).
“A primary effect of the lis pendens is that the purchaser of some interest in the property subsequent to the filing of the notice of pendency is bound to the proceedings in the action as if he had been made a party.” (2-15 Bergman on New York Mortgage Foreclosures § 15.02.) While the effect of a foreclosure will be to cut off any interest in the property acquired by a person after the filing of the notice, “the rights of parties, acquired at a time in which a lis pendens either was not filed or had lapsed, will not be affected by the foreclosure judgment.” (Id. [emphasis added].) So, for example, “a tenant whose lease was recorded prior to the filing of a lis pendens is not bound by a subsequent foreclosure” (id.).
Accordingly, restoring the originally filed notice of pendency nunc pro tunc to the date of filing could prejudice parties who acquired an interest in the property during the period that the notice of pendency was deleted from the County Clerk’s records. The plaintiff has made no showing that a person conducting a title search would have had access to this deleted notice of pendency. Notably, Gonsalves’s submissions indicate to the court that the property was a rental property (see Gonsalves’s aff in opposition ¶ 7]). While it may be unlikely that a prospective tenant of a residential property would conduct due diligence by going to the county clerk’s office and making a search for a notice of pendency filed against the property, the notice of pendency is, nevertheless, the only real legal notice to such tenant in the event of a foreclosure; absent a properly filed notice of pendency or being made a party to the action, the tenant’s lease would survive the foreclosure. Moreover, the notice of pendency implicates the interests of any person who might potentially acquire an interest in the property (i.e., a mortgagee) who is not given direct notice of the lawsuit by virtue of being made a party defendant.
*536 It is evident, therefore, that the plaintiffs request to restore the notice of pendency potentially implicates the interests of nonparties. Since the nature of this request is not merely to “correct” a mistake, but to “disregard” the lack of notice during the period of time after the notice of pendency was removed from the clerk’s records, the court can only grant the relief sought by the plaintiff “if a substantial right of a party is not prejudiced” (CPLR 2001 [emphasis added]; see Grskovic v Holmes, 111 AD3d at 242-243). Although the statute is explicitly concerned with the potential for prejudice to “a party,” because the plaintiff is asking the court to reinstate a document that is intended for the benefit of nonparties, the court holds that, in this instance, the purpose and spirit of the statute can only be accomplished if consideration is given to the potential prejudice that could be caused to nonparties by granting the requested relief (see McKinney’s Cons Laws of NY, Book 1, Statutes § 235 [“When a word is susceptible of two or more significations, the meaning to be given must be determined from the context of the statute, the purpose and spirit of it, and the intention of the lawmakers”]). Here, because of the potential prejudice to non-parties, the court cannot grant the branch of the motion which seeks to restore the notice of pendency.
The plaintiff is free to file a new notice of pendency, however, such notice shall only take prospective effect from the date of its filing. The court notes that, while a notice of pendency is mandatory in a foreclosure action, it need not be filed until “at least twenty days before a final judgment directing a sale is rendered” (RPAPL 1331). Accordingly, assuming the action proceeds to a foreclosure, it is the plaintiff who must bear the risk that the sale will not cut off some interest in the property acquired after the original notice of pendency was withdrawn but before a new notice of pendency is filed.
2. Gonsalves’s cross motion pursuant to CPLR 2004 is referred for a hearing
With respect to Gonsalves’s cross motion pursuant to CPLR 2004 to extend his time to answer, it is evident that, inherent in this motion is an additional request to vacate his default. Notably, the court has already granted an order of reference upon Gonsalves’s default, which is the procedural equivalent of a liability finding (see e.g. 1-2 Bergman on New York Mortgage Foreclosures § 2.01 [1] [describing the liability phase of a foreclosure action as follows: “Order to appoint referee to compute (if default) or motion for summary judgment, or trial, if *537 contested by submission of answer”]). Accordingly, on the present motion Gonsalves must demonstrate his entitlement to vacatur of that prior order under one of the grounds enumerated in CPLR 5015 (a), which governs relief from a prior order or judgment.
Here, Gonsalves avers that, at the time that service of the summons and complaint was allegedly made on a person of suitable age and discretion at the subject property, he did not reside there. He avers that he had hired a management company to manage the property. Indeed, the caption of this action includes two “John Does” who refused to give a name to the process server, a fact from which one could infer that there were tenants living on the property. Here, Gonsalves’s detailed denial of service rebuts the prima facie evidence of proper service created by the process server’s affidavit, necessitating a hearing on the issue of whether the defendant is entitled to vacatur of his default pursuant to CPLR 5015 (a) (4) (see Dime Sav. Bank of Williamsburg v 146 Ross Realty, LLC, 106 AD3d 863, 864 [2d Dept 2013] [“Although the process server’s affidavit constituted prima facie evidence of proper service, Goldberger’s sworn claim that he did not reside at the subject premises, along with his submission of documentary evidence supporting that claim, was sufficient to rebut the prima facie showing, and to necessitate a hearing”]). Although the plaintiff contends in its reply/ opposition papers that Gonsalves has failed to proffer, inter alia, a meritorious defense to the action, a defendant need not demonstrate a meritorious defense where he or she moves to vacate his or her default on the ground of lack of personal jurisdiction (see id. [“a party who moves to vacate a judgment entered on default on the ground of lack of personal jurisdiction is not required to demonstrate a reasonable excuse for the default or a potentially meritorious defense”]).
Accordingly, it is hereby, ordered that the branch of the plaintiffs motion which is pursuant to CPLR 2001 to, in effect, restore its originally filed notice of pendency is denied without prejudice to filing a new notice of pendency which shall take prospective effect from the date of its filing; and it is further ordered that the branch of the plaintiffs motion which is pursuant to CPLR 2001 to reinstate the summons and complaint under the original index number is conditionally granted, and if, within 20 days of the date of this order, the plaintiff pays the applicable filing fee for the purchase of an index number in a foreclosure action to the Westchester County Clerk, then the ac *538 tion shall be restored under the plaintiffs index number, and the County Clerk shall take whatever action is necessary to effect this order, including, if necessary, accepting for filing a replacement copy of the summons and complaint that conforms to the copy submitted with the plaintiffs moving papers (exhibit A to motion sequence No. 2); and it is further ordered if the plaintiff fails to pay the applicable filing fee within 20 days of the date of this order then the action shall be deemed dismissed without further order of this court; and it is further ordered that the defendant Mark Gonsalves’s cross motion is referred for a hearing to determine whether he was properly served with the summons and complaint; and it is further ordered that all other relief requested and not decided herein is denied.

. A user accessing this case through the NYSCEF system will find that the first two entries in the document list are blank. These two entries presumably contained the complaint and the notice of pendency.

. The court notes that, at present, the fee for purchasing an index number in a foreclosure action is $400 (as opposed to $210 for all other actions) and the fee for filing a notice of pendency is $35.

. According to NYSCEF, the defendant filed an answer on October 21, 2013, and the plaintiff rejected the answer by letter dated October 28, 2013.